Docusign Envelope ID: 9260FC06-60E3-8393-82FC-60EA8818EA80


Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re:<br><br>SHANE CROWLEY<br><br>Debtor. | ) | Case No. 26-509-ELG<br>(Chapter 7) |
| SHANE CROWLEY,<br><br>Plaintiff,<br><br>v.<br><br>ANDREA CAMPBELL DAVISON,<br>In Her Official Capacity as Chapter 7<br>Trustee of the Estate of Shane Crowley,<br><br>Defendants. | ) | Adv. Case No. 26-10027 |

**VERIFIED MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Comes now Shane Crowley ("Mr. Crowley," the "Debtor," or the "Plaintiff"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7065 and Federal Rule of Civil Procedure 65, and moves this Honorable Court to enjoin—temporarily and preliminarily—Andrea Campbell Davison in her official capacity as chapter 7 trustee of the estate of Shane Crowley ("Ms. Davison," the "Trustee," or the "Defendant") from (i) exercising

dominion or control over Eton Ct Dev, LLC ("ECDL"); (ii) exercising dominion or control over the assets of ECDL; (iii) holding monies belonging to ECDL or any real estate tenant in privity with (a) ECDL, (b) any affiliate of ECDL, or (c) Mr. Crowley; and/or (iv) demanding any party holding such funds turn said monies over to the Trustee or any agent of the Trustee, and in support thereof states as follows:

## I. Introduction

In wanton disregard for a concept that has been sacrosanct since codification of section 70 of the Bankruptcy Act of 1898, the Trustee has decided to ignore Mr. Crowley's validly-invoked exemptions and attempt to commandeer at least one of the Debtor's fully exempt assets. The object in question is a real estate holding company with secured debts at least $1 million in excess of the underlying property's fair market value. In fact, it is likely (albeit not certain) the real estate assets will be foreclosed in the next 12-18 months. So, by any normative balance sheet standard, the entity is worthless, and Mr. Crowley has thusly been generous in assigning his membership interest a value of $1.00 and then exempting the same. But the entity does produce revenue and it seems the Trustee—in derogation of Mr. Crowley's right to exempt his ownership of ECDL—wishes to siphon those monies into her own coffers, to be administered as part of the Debtor's bankruptcy estate.

Ms. Davison, through counsel, has accordingly written to the property manager of ECDL and attempted to expropriate all correlative rental revenues and security deposits. She has done this without objecting to Mr. Crowley's exemptions, much less succeeding in pursuit of any such objection. And, in so doing, she has indicated a general viewpoint that the Debtor's exemptions are not a legally protected area of property outside the reach of a chapter 7 trustee but, rather,

something tantamount to a list of goodies that Mr. Crowley may hope to be one day returned to him beneath an oversized fir tree.

The Trustee's conduct is unlawful and, if not promptly enjoined, will rather promptly creep ever-further into the tortious terrain of conversion and interference with contractual relations, alongside the statutorily-forbade terrain of utilizing the color of law to seize a citizen's assets in contravention of that citizen's constitutionally-protected property rights. Mr. Crowley accordingly now asks this court to enter such an injunction—temporarily and preliminarily—and, in so doing, to direct the Trustee to immediately cease this egregious frolic.

## II. Standard

The standard governing requests for preliminary injunctive relief has been familiarly established by the Supreme Court:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf* v. *Geren*, 553 U.S. 674, 689-690 (2008); *Amoco Production Co.* v. *Gambell*, 480 U.S. 531, 542 (1987); *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 311-312 (1982)). *See also DC Pres. League v. DOI*, No. 1:26-cv-477-ACR, __ F.Supp.3d __, 2026 U.S. Dist. LEXIS 244887, at *44 (D.D.C. Oct. 26, 2026) (holding similarly). Though there was once a "sliding scale" approach to favoring certain of these factors over others, case law has generally evolved to regard the four prongs as conjunctive in nature, thereby likely—albeit not assuredly—ending the ability of litigants to supplant a weak showing on one front with a strong showing on another front. *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1235-36 (D.C. Cir. 2025).

Issuance of a temporary restraining order is subject to the same standard. *See, e.g.*, *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 (D.D.C. 2009) ("The same standard applies to both temporary restraining orders and to preliminary injunctions.") (citing *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003)). However, when contemplating entry of temporary injunctive relief, "[a] court also considers the 'underlying purpose' of a TRO—'preserving the status quo and preventing irreparable harm' until it has an opportunity to rule on the merits." *New Mexico v. Musk*, 769 F. Supp. 3d 1, 5 (D.D.C. 2025) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974); *Shelley v. Am. Postal Workers Union*, 775 F. Supp. 2d 197, 202 (D.D.C. 2011); *Elec. Data Sys. Fed. Corp. v. Gen. Servs. Admin.*, 629 F. Supp. 350, 352 (D.D.C. 1986)).

## III. Relevant (and Likely Undisputed) Facts

The facts relevant to the instant motion are relatively straightforward and, upon information and belief, unlikely to be disputed by the Trustee (who, despite the myriad rhetorical broadsides herein, happens to be an esteemed insolvency professional and a person of exceptional character):

1. Mr. Crowley filed a petition for chapter 7 relief, on October 2, 2026. *See* Petition and Schedules, attached hereto as Exhibit A.

2. With his petition, Mr. Crowley filed full schedules and a statement of financial affairs. *Id.*

3. On Schedule A/B, Mr. Crowley listed his 100% ownership interest in ECDL, valuing the same at $1.00. *Id.* at p. 13.

4. Mr. Crowley also exempted his 100% ownership interest in ECDL. *Id.* at p. 18.

5. ECDL owns three condominium units situated in the District of Columbia. *See* Deed, to be docketed prior to hearing.[1]

6. Those three condominium units—alongside one condominium unit belonging to a related entity (also wholly owned and exempted by Mr. Crowley)—generate monthly rental revenues that are collected by ECDL and, in due course, routinely remitted to Mr. Crowley as the sole equity holder thereof. *See* Verification of Mr. Crowley, *infra*.

7. Pre-petition, Mr. Crowley—a licensed real estate agent—endeavored to sell the real property owned by ECDL, on the open market, but the highest and best offer realized thereupon was significantly less than the outstanding sum of the debt secured by the property. *Id.*

8. The secured lender declined to allow the foregoing offer to be accepted as a so-called "short sale." *Id.*

9. Based upon the paucity of offers for the real estate held by ECDL, and the debt on which ECDL is obligated (which is ever-increasing by virtue of interest accruing), Mr. Crowley determined ECDL to have negative equity in excess of $1 million and resolved to value his ownership interest at $1.00 (a sum he believes to be $1.00 greater than the actual value thereof). *Id.*

10. Following the holding of a meeting of creditors in Mr. Crowley's case, the Trustee—through counsel—wrote to ECDL's property manager:

> . . . Upon the filing of the petition, an estate was created consisting of all legal and equitable interests of the Debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The Debtor's membership interests in the Company became property of the estate, subject to the Trustee's management authority. As a result,

[1] A certified copy of the deed has been ordered from the District of Columbia, *see* Fed. R. Evid. 902(1), and will be uploaded upon receipt, prior to a hearing on this motion. The instrument in question is document number 2023106430, recorded amongst the land records of the District of Columbia, and may be viewed—for free—by anyone, in advance of the certified iteration being obtained.

> the Trustee is exercising her rights as the sole member of the entities. This includes exercising her management authority over the Eton Properties by providing direction to the management company to protect the assets of these entities, including, but not limited to, the safeguarding of all rental proceeds generated by the Eton Properties.
>
> The estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(6). Accordingly, all rents, security deposits, and other funds collected or held on account of the Eton Properties are property of the estate subject to the Trustee's exclusive control. Section 542(a) of the Bankruptcy Code requires any entity in possession, custody, or control of property that the Trustee may use, sell, or lease to deliver that property, or its value, to the Trustee and to account for it. . .

Letter of November 10, 2026, attached hereto as Exhibit B.

11. The foregoing missive goes on to instruct the property manager to "[d]eliver to the Trustee all rents, security deposits, other deposits, fees, and other funds collected or held on account of the Eton Properties. . ." *Id.*

12. Shortly thereafter, Mr. Crowley commenced this lawsuit. *See* Complaint, ECF No. 1.

## IV. Argument: Injunctive Relief is Appropriate

As observed by Justice Blackmun, section 522 of the Bankruptcy Code ". . . was enacted to protect the debtor's essential needs and to enable him to have a fresh start economically." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 83 (1982) (Blackmun, J., concurring). The Trustee, however, appears to afford this statutory provision short shrift, seemingly being of the belief that exemptions are at-best-aspirational listings of those things a debtor wishes to retain if a chapter 7 may so allow. And the Trustee has, accordingly, proceeded to attempt to seize—without any modicum of due process whatsoever—Mr. Crowley's interest in ECDL, through the sort of strongarm extrajudicial taking the Founding Fathers openly proscribed. This activity is unlawful and this activity merits injunction.

**a. Mr. Crowley is Likely to Succeed on the Merits**

As a starting point, Mr. Crowley is likely to succeed on the merits of this dispute, especially insofar as the dispute is not particularly complex in nature. The Debtor believes section 522 of the Bankruptcy Code—allowing for individuals to exempt property when seeking bankruptcy relief—should be followed. The Trustee appears to believe that statutory provision is solely advisory in nature. Mr. Crowley is correct; the Trustee is wrong. There is thusly an overwhelming likelihood of Mr. Crowley succeeding in his petition for declaratory relief.

Section 522 is topically plain: "Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case. . ." 11 U.S.C. § 522(c).[2]

In observing that "exempt property is not 'property of the estate' which may be 'distributed,'" *United States v. Warfield (In re Tillman)*, 53 F.4th 1160, 1169 (9th Cir. 2022), the United States Court of Appeals for the Tenth Circuit has explained:

> When a debtor properly exempts a property interest under § 522, the exemption withdraws that property interest from the estate and, thus, from the reach of the trustee for distribution to creditors. Such an exempted property interest revests with the debtor and no longer belongs to the estate.

*Tillman*, 53 F.4th at 1169 (citing *Owen v. Owen*, 500 U.S. 305, 308 (1991); *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir. 1995); *Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1210 (9th Cir. 2010)). *See also In re Ruppel*, 368 B.R. 42, 43-44 (Bankr. D. Or. 2007) (". . . [e]xempt property is property of the estate which a chapter 7 trustee cannot liquidate or distribute to creditors holding allowed claims, because it has been withdrawn from the estate

---

[2] There are various enumerated exceptions to this provision, set forth in the language immediately following this quotation. It is not believed there exists any contention those exceptions are relevant *sub judice*.

for the benefit of the debtor.") (quoting *S & C Home Loans, Inc. v. Farr (In re Mathew Farr)*, 278 B.R. 171, 177 (9th Cir. BAP 2002) (citing *Owen*, 500 U.S. at 308)).

So, by operation of Mr. Crowley exempting his interest in ECDL, that interest has (i) been withdrawn from his estate; (ii) revested in Mr. Crowley; and (iii) escaped the reach of the Trustee. And while Ms. Davison is, no doubt, free to object to the exemption, *see* Fed. R. Bankr. P. 4003(b), she has not done so as of present—much less succeeded in connection with an objection (something that would be a condition requisite to returning ECDL to the Debtor's estate).

All of which means that endeavoring to seize ECDL, commandeer the entity's assets, and deprive Mr. Crowley of the benefits thereof, is not a series of actions consistent with management of a chapter 7 estate but, rather, a series of actions consistent with the ongoing pursuit of tortious conduct. The Trustee is attempting to take an asset that, as a matter of law, belongs solely to Mr. Crowly: that is an act of conversion. *See Busby v. Cap. One, N.A.*, 772 F. Supp. 2d 268, 280 (D.D.C. 2011) (delineating the elements of a claim for conversion). By virtue of being an act of conversion (a tort), the Trustee's missive to ECDL's property manager is also an act of tortious interference. *See Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1109 (D.C. Cir. 2022) (citing 9 Stuart M. Speiser et al., American Law of Torts § 31:45 (2022)). And insofar as the Trustee is undertaking these efforts under color of the Bankruptcy Code, the conduct instantly afoot is additionally invocative of relief under title 42 of the United States Code. *See* 42 U.S.C. § 1983.

So, yes, Mr. Crowley—standing on the side of enforcing statutory law, preventing common law torts, and trying to preempt a taking in contravention of the Fifth Amendment—is likely to succeed on the merits. The relief he seeks in this case is declaratory in nature, *see* Complaint, ECF No. 1, albeit with a carve out for any further relief necessary to effectuate those declaratory ends, *id.* at *ad damnum* clause (citing 28 U.S.C. § 2202). The declarations sought are ones that jibe—

neatly and consistently—with settled law. The Trustee's proposed path of conduct, by contrast, offends constitutional, statutory, and common law norms. So, whether sitting as a court of law or equity, there is an overwhelming degree of confidence this Honorable Court will see fit to find Mr. Crowley successful on the merits of his claim.

**b. Irreparable Harm Will be Suffered in the Absence of Injunctive Relief**

If the Trustee is not temporarily and preliminarily enjoined, Mr. Crowley will suffer irreparable harm in three distinct but related manners: (i) his civil rights will be impinged; (ii) he will be made to violate the District of Columbia law governing security deposits; and (iii) he will suffer all the harms correlative to the loss (even if temporary) of an asset.

First, and most plainly, what the Trustee is endeavoring is—as noted *supra*—a taking sans due process, in contravention of the Fifth Amendment. *See* U.S. Const. amend. V ("No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation."). Such, in turn, is a facial violation of Mr. Crowley's civil rights which, in and of itself, constitutes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding a trial court erred in denying injunctive relief where a litigant's civil rights were jeopardized).

Second, the Trustee's demand that ECDL's property manager turn over security deposits is independently problematic since such will cause Mr. Crowley and ECDL to run afoul of District of Columbia law. Specifically, the city's regulatory scheme requires, *inter alia*, "[a]ll monies paid to an owner by tenants for security deposits . . . shall be **deposited by the owner** in an interest bearing escrow account established and held in trust in a financial institution in the District of Columbia. . . for the sole purposes of holding such deposits or payments." D.C. Code Mun. Regs. tit. 14 § 308.3 (emphasis added). As of present, ECDL (the owner of the properties in question)

has deposited monies into a proper financial institution. Yet if those funds are turned over to the Trustee—as Ms. Davison has demanded—then the funds will no longer be deposited by ECDL, into a dedicated account, and ECDL will fall into discord with this regulatory mandate.

Third, Mr. Crowly will suffer the harms associated with a loss of control over ECDL. And, lest the Trustee suggest this case concern solely pecuniary harms, it bears notation that what Ms. Davison is endeavoring to seize is not merely the rental income of ECDL but, too, the whole of ECDL itself. This includes the ability to realize income from ECDL during a period of time when Mr. Crowley is setting off about his fresh start—something that would be particularly problematic for self-evident reasons. This also includes a loss of control over the unique real property held by ECDL. And this does, too, include a loss of ability to manage the affairs of ECDL—a closely held and fully-exempted asset.

**c. The Balance of Equities Favors Mr. Crowley**

If she can find a good faith basis to do so, the Trustee is free to object to Mr. Crowley's exemptions and, should she succeed thereupon, to then take control of ECDL once it is deemed non-exempt. She is also free to file a motion to operate ECDL on behalf of the Debtor (though it is difficult to envision how such a motion could succeed since, as noted *passim*, ECDL is an exempted asset that has left the estate Ms. Davison is charged with administering). And these options will remain, regardless of how this motion is ruled upon—with there being no discernable prejudice to the Trustee, whatsoever, in making her follow these accepted legal steps before ransacking a debtor's livelihood. Yet, as observed above, there will be irreparable and palpable harm to Mr. Crowley if the Trustee's extrajudicial commandeering of ECDL is permitted to continue unabated.

To be sure, ECDL is a domestic limited liability company that holds real estate assets managed by a third party entity with sterling credentials. There is no cognizable risk of its assets being committed to waste in the hands of Mr. Crowley. Given that ECDL's balance sheet is more deeply underwater than the Mariana Trench, there is no risk of Mr. Crowley selling the company (or its real estate assets) while this bankruptcy pends. And given that there is no dispute as to the existence of adequate insurance (even though Mr. Crowley is assuredly under no compulsion to insure the derivative assets of a parent asset that is, itself, fully exempt), there is also no risk of loss should a casualty be occasioned.

The only risks in this case are those being borne by Mr. Crowley, who stands threatened with a loss of his source of income, a deprivation of his constitutional rights, and all of the infirmities correlative to being the victim of tortious conduct. Those assuredly tip well in favor of entering injunctive relief.

**d. Public Policy Abhors Extrajudicial Confiscatory Behavior**

The republic will neither rise nor fall based on the outcome of this motion. No historic golf courses are going to be leveled by an overzealous developer-in-chief. The vote tally in Mississippi will be unaffected. And a light snow will soon envelope Mount Desert Island. But there is still something to be said for the public interest in seeing bankruptcy trustees heed their statutory charge and forbear from violating the rights of the debtors whose fates hang delicately in the balance of each case. There is, too, something to be said about preserving Mr. Crowley's civil rights. And it is thusly urged that the public interest, while a minor factor in this case, does nonetheless tip in favor of the entry of injunctive relief.

## V. Argument: No Bond Should be Ordered Since the Debtor is the Movant

As discussed above, the Trustee bears no cognizable risk of harm if enjoined, so it is difficult to fathom why a significant bond would be demanded in this case in the first instance. *See Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011). However, Mr. Crowley nonetheless observes that he is, of course, the debtor herein, and thereby expressly outside the scope of those who may be compulsorily ordered to post a bond as a condition precedent to the entry of injunctive relief. *See* Fed. R. Bankr. P. 7065.

## VI. Conclusion

WHEREFORE, Mr. Crowley respectfully prays this Honorable Court (i) enjoin—temporarily and preliminarily—the Trustee from (a) exercising dominion or control over ECDL; (b) exercising dominion or control over the assets of ECDL; (c) holding monies belonging to ECDL or any real estate tenant in privity with (I) ECDL, (II) any affiliate of ECDL, or (III) Mr. Crowley; and/or (d) demanding any party holding such funds turn said monies over to the Trustee or any agent of the Trustee; and (ii) afford such other and further relief as may be just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 11/12/2026

DocuSigned by:
334E3955FB2A41F...
Shane Crowley

*[Signature on Counsel on Following Page]*

Respectfully submitted,

Dated: November 12, 2026

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Mr. Crowley*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of November, 2026, I caused a copy of the foregoing to be filed via this Honorable Court's CM/ECF system, thereby effectuating service on all parties in interest.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.