Bradley D. Jones, No. VA68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 785-9100
Fax (202) 572-9943
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for*
*Andrea Campbell Davison, Trustee*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>SHANE CROWLEY,<br><br>Debtor. | Case No. 26-00509-ELG<br>Chapter 7 |
| SHANE CROWLEY,<br><br>Plaintiff,<br><br>v.<br><br>ANDREA CAMPBELL DAVISON, TRUSTEE,<br><br>Defendant. | Adv. Proc. No. 26-10027-ELG |

**OPPOSITION TO DEBTOR/PLAINTIFF'S MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Andrea Campbell Davison, the duly appointed trustee ("Trustee") of the chapter 7 bankruptcy estate (the "Estate") of Shane Crowley (the "Debtor" or the "Plaintiff"), by and through her proposed undersigned attorneys, files this opposition ("Opposition") to the Debtor/Plaintiff's Motion for Entry of a Temporary Restraining Order or Preliminary Injunction (the "Motion"). In support of her Opposition, the Trustee states as follows:

## Preliminary Statement

Numerous bankruptcy courts have held that where a debtor has a membership interest in a single-member LLC and files a chapter 7 bankruptcy petition, the bankruptcy trustee has the right to control and administer the LLC. *Schwartzer v. Cleveland (In re Cleveland)*, 519 B.R. 304, 306 (D. Nev. 2014) (collecting cases).

The Debtor cannot claim a $1.00 exemption in his single-member LLCs in order to prevent the trustee from investigating his property interests or administering thousands of dollars of rent proceeds that belong to the bankruptcy estate and may be the cash collateral of the Debtor's secured creditor. *In re Cicala*, 142 B.R. 570 (Bankr. D.D.C. 1992) (holding that regardless of the debtors' $1.00 claimed exemption, "it is the trustee who now owns the real estate and would generally be viewed as having the authority to collect the rents"). This is particularly true, here, where the rent receipts vastly exceed the dollar amount claimed as exempt and the Trustee's time to object to the debtor's claim of exemptions has not expired.

The Bankruptcy Code requires trustees to collect monies that are property of the estate and to investigate the financial affairs of the Debtor. 11 U.S.C. §§ 704(a)(1), (a)(4). The Trustee is attempting to fulfill those obligations here. The Debtor's request for a temporary restraining order or preliminary injunction essentially asks the Court to issue an order preventing the Trustee from fulfilling her duties under the Bankruptcy Code. The Motion should be denied.

## Factual Background

1. The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 2, 2026. Andrea Campbell Davison was appointed as the Trustee. [Dkt. No. 1].

2. The Debtor filed his bankruptcy Schedules with his petition. [Dkt. No. 1]. On his schedules, the Debtor listed a 100% ownership interest in twelve different LLCs. [Dkt. No. 1, pp.

13-14].

3. At least five of these LLCs own or owned real property as follows:

| Property | Owner of Record |
|---|---|
| • 1200 Eton Ct #T4<br>Washington, D.C., 20007<br><br>• 1202 Eton Ct #T3<br>Washington, D.C., 20007<br><br>• 1204 Eton Ct #T2<br>Washington, D.C., 20007 | Eton Ct Dev LLC |
| • 1200 Potomac St #T5<br>Washington, D.C. 20007 | Eton Court 5 Dev LLC |
| • 1202 Potomac St #T6<br>Washington, D.C. 20007<br>(Debtor's residence) | Eton Ct T 6 LLC |
| • 4500 Walsh St,<br>Chevy Chase, MD 20815<br>(now 6960 West Ave #3)<br>6970 West Ave #2) | 4500 Walsh LLC |
| • 4702 West Virginia Ave,<br>Bethesda, MD 20814 | 4702 West Virginia Ave., L.L.C. |

4. The most valuable of these properties appears to be five new construction townhomes in Georgetown, Washington, D.C. with the addresses of: (i) 1200 Eton Ct #T4, Washington, D.C., 20007; (ii) 1202 Eton Ct #T3, Washington, D.C., 20007; (iii) 1204 Eton Ct #T2, Washington, D.C., 20007; (iv) 1200 Potomac St #T5, Washington, D.C. 20007; and (v) 1202 Potomac St #T6, Washington, D.C. 20007 (collectively, the "Eton Court Properties").

5. The Eton Court Properties are the collateral of Anchor Loans, LP ("Anchor Loans"), which has loaned approximately $14.8 million that the Debtor has personally guaranteed, though it is not clear which properties are associated with which loan. *See* [Dkt. No. 1, p. 23–24].

6. Despite not being authorized by the Trustee, the Eton Court Properties are currently listed for sale. Copies of the internet marketing pages advertising the sale of these properties are attached as **Exhibit A**. Collectively, the list prices total $10,749,000.00.

7. The Debtor's Schedule I and J indicate he receives significant distributions from the LLCs, which the Debtor uses to fund his lifestyle. [Dkt. No. 1, pp. 35–36].

8. The Section 341 Meeting of Creditors was held on October 29, 2026. A transcript of the § 341(a) Meeting is attached as **Exhibit B**.

9. At the § 341(a) Meeting, the Debtor testified that all five of the Eton Court Properties are rented. [Ex. B, pp. 9–10]. Four of the Eton Court Properties are rented to third party tenants and one of the properties is leased to the Debtor. [Ex. B, p. 10].

10. While the Debtor has entered a written lease and provided a security deposit, he has never actually paid rent for the property he is living in and does not intend to do so until after the secured lender forecloses. [Ex. B, p. 23, ln. 12–p. 24, ln. 4].

11. All of the Eton Court Properties are managed by a third-party management company named Sojourn, LLC ("Sojourn"). [Ex. B, p. 11, ln. 4–6].

12. While it is not entirely clear to the Trustee at this point how the rent proceeds are collected and disbursed, the Debtor testified that Sojourn is responsible for signing the leases, collecting the rents, and then paying them out to the Debtor every month. [Ex. B, p. 23, ln. 2–6]. The Debtor explained that Sojourn pays the net operating income from the rent proceeds to the Debtor's entity, Eton Ct Dev LLC. [Ex. B, p. 25, ln. 8–12]. However, those funds are not accumulating in the Eton Ct Dev LLC bank account because the Debtor is personally drawing out approximately $13,800 per month of funds. [Ex. B., p. 19, ln. 19–p.20, ln. 6]. All of the funds that the Debtor is personally drawing out of his entities are derived from the rent proceeds. [Ex.

B., p. 20, ln. 4-6].

13. The Debtor was asked whether Anchor's security interest attaches to the rent proceeds of the properties that Anchor had lent money to. [Ex. B, p. 20, ln. 18–19]. The Debtor answered he was not sure. [Ex. B, p. 20, ln. 20].

14. According to the Debtor's Schedules, the portfolio of rental properties generates about $34,000 in monthly rent proceeds. [Dkt. No. 1, p. 37]. No amounts are being paid toward debt service on the loan secured by the properties. [Dkt. No. 1, p. 37]. The rental proceeds received according to the schedules is reduced by expenses, including amounts for property taxes and condo/HOA fees. [Dkt. No. 1, p. 37]. However, per the testimony at the § 341(a) Meeting, many of the expenses referenced on Schedule J are not actually being paid.

15. The Debtor had been paying the real property taxes, but he stopped paying the property taxes on the Eton Court Properties when he realized Anchor was going to foreclose on the units. [Ex. B, p. 24, ln. 17–20]. The Debtor testified he stopped paying the property taxes sometime last year. [Ex. B, p. 24, ln. 21–p.25, ln. 3].

16. Similarly, the Debtor is not currently paying the condo/HOA fees that are due because the Debtor expects Anchor to pay these amounts. [Ex. B., p. 24, ln. 8–10].

17. As a result, the value of the Eton Court Properties is currently eroding due to the accrual of unpaid taxes and condo/HOA fees.

18. The Debtor testified that insurance is being paid on the Eton Court Properties, [Ex. B, p. 11, ln. 9–11], and that there are currently no life, health, or safety issues that are affecting the tenants, [Ex. B, p. 26, ln. 11–15; p. 28, ln. 7–12]. However, so far the Debtor has not provided the Trustee with proof that insurance is in place nor has the Debtor allowed the Trustee's real estate professional to access the properties. As a result, the Trustee has been

unable to verify these claims.

19. In addition to the receipt of the rent proceeds, the Debtor has an agreement with the listing agent attempting to sell the properties, in which on a successful sale, the listing agent would receive 80% of compensation in connection with the sale and the Debtor would receive 20%. [Ex. B, p. 27, ln. 10–15].

20. The Debtor valued his interests in each of his LLC entities at $1.00. [Dkt. No. 1, p. 13–14].

21. The Debtor was asked how he arrived at the $1.00 valuation. [Ex. B, p. 19, ln. 2–4]. The Debtor testified, "My lawyer helped me with that—all of that information. Basically, they're all underwater." [Ex. B, p. 19, ln. 3-4]. The Debtor was then asked whether the $13,800.00 per month that he was personally drawing out affected the valuation that he put on the entity. [Ex. B., p. 20, ln. 7–8]. The Debtor responded, "No." [Ex. B., p. 20, ln. 9].

22. The Debtor claimed exemptions to certain property interests on his Schedule C, selecting the federal exemptions. [Dkt. No. 1, p. 17–19].

23. Among these exemptions, the Debtor used the federal wildcard exemption in 11 U.S.C. § 522(d)(5), which allows a debtor to exempt their interest in property "not to exceed in value $1,675 plus up to $15,800 of any unused amount of the exemption provided under paragraph (1) of this subsection."

24. The Debtor used the majority of his wildcard exemption to exempt $14,500.00 of the Debtor's interest in his watch, a Rolex GMT-Master II. [Dkt. No. 1, p. 18]. However, the Debtor took $1.00 of his wildcard exemptions and applied it to his interests in twelve of his LLCs, including Eton Ct Dev LLC and Eton Court 5 Dev LLC. [Dkt. No. 1, p. 17–18]. The

Debtor also used $4,500.00 of his wildcard exemption on his interest in Eton Ct T6, LLC.[1] Thus, in total, the Debtor applied a sum of $4,512.00 of his wildcard exemption to his membership interests in these LLCs, including the LLCs owning the Eton Court Properties.

25. The Official Form Schedule C includes a box permitting a Debtor to check a box to state that the Debtor is claiming an exemption in 100% of the fair market value in an item of property up to the statutory limit. The Debtor did not originally check this box with respect to any of the LLC interests. [Dkt. No. 1, p. 17–18]. On November 16, 2026, the Debtor amended his exemptions to check this box with respect to each of his LLC interests and other property. [Dkt. No. 17, p. 3–6].

26. Upon information and belief, the amount of rent proceeds and other monies that the Debtor has received since the filing of the case, which are proceeds of his LLC interests and the rents attributable to the Eton Court Properties greatly exceed the $4,512.00 of exemptions the Debtor has applied to his LLC interests. The Debtor has not yet delivered to the Trustee the funds he received in excess of $4,512.00.

27. On November 10, 2026, the Trustee, through her counsel, sent a letter to Sojourn, informing the management company that the Trustee was exercising her authority as the sole member and owner of Eton Ct Dev LLC, Eton Court 5 Dev LLC, and Eton Ct T 6 LLC. [Adv. Dkt. No. 1-1]. The Trustee demanded, among other items, that Sojourn immediately stop making distributions of the net rent proceeds to the Debtor, send those funds to the Trustee so the Trustee could deposit the monies in a fiduciary account, and provide an accounting to the Trustee of all funds collected and disbursed within a certain period of time before the Petition Date.

[1] The $4,500.00 amount appears to be equal to the amount of the Security Deposit that the Debtor delivered to Sojourn in connection with the Debtor's lease of this property. *See* [Dkt. No. 1, p. 14, ln. 22].

28. The Trustee is actively investigating the estate's interest in the LLCs and the status of the real estate owned or controlled by the Debtor, including the Eton Court Properties. In support of this effort, following the § 341(a) Meeting, the Trustee through counsel sent a summary of information the Trustee was requesting. A copy of this request is attached as **Exhibit C**.

29. So far, none of the information requested by the Trustee has been provided by the Debtor, even though, the Debtor has an obligation to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title" and to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate[.]" 11 U.S.C. § 521(a)(3)–(4).

30. On November 10, 2026, in response to the Trustee's demand to Sojourn, the Debtor commenced an adversary proceeding *Shane Crowley v. Andrea Campbell Davison (In re Crowley)*, Adv. Proc. No. 26-10027-ELG (Bankr. D.D.C.) (the "Adversary Proceeding"). The Adversary Proceeding seeks declaratory relief that the Trustee has no right to administer Eton Ct Dev LLC or direct Sojourn to turn over the security deposits or rent proceeds collected by Sojourn.

31. On November 12, 2026, the Debtor filed a Motion for Temporary Restraining Order and for a Preliminary Injunction seeking temporary and preliminary injunctive relief to prevent the Trustee from exercising control over Eton Ct Dev LLC, holding monies belonging to Eton Ct Dev LLC, or demanding that Sojourn turn over monies it collects. [Adv. Dkt. No. 3, p. 12]

32. The Trustee files this Opposition to the request for temporary and preliminary injunctive relief.

## **Argument**

The Trustee is entitled to exercise control over Eton Ct Dev LLC, and the other LLCs, because the Debtor's membership interests are property of the Bankruptcy Estate. *See* 11 U.S.C. § 541(a)(1). The Trustee is also entitled to require distributions on account of those LLCs to be turned over to her because the distributions are also property of the Estate or proceeds of property of the Estate. 11 U.S.C. § 541(a)(1), (a)(6).

The Debtor is wrong that claiming a $1.00 exemption in each of the LLCs prevents administration by the Trustee. The federal wildcard exemption allows a debtor to exempt an interest in property up to a specific dollar amount but does not exempt the property itself in full or in kind. *In re Soost*, 262 B.R. 68, 72 (B.A.P. 8th Cir. 2001) (explaining that "where the value of an asset exceeds the amount of the claimed exemption, the asset as a whole does not become exempt"). Instead, the exemption is limited to the declared value of the debtor's interest, and any value exceeding the statutory limits remains part of the bankruptcy estate, and can thus be administered by the Trustee. *Schwab v. Reilly*, 560 U.S. 770, 783 n.9 (2010).

Injunctive relief should be denied. The Debtor is not likely to win on the merits because the Trustee is taking actions consistent with her rights under the law. Moreover, at this stage, the Trustee is merely seeking to have money safeguarded in a fiduciary account while the parties' rights are being determined, so the Debtor will not suffer irreparable harm. To the contrary, the balance of the harms favors the Trustee who will have no ability to recover funds once spent by the Debtor, may have risk that Anchor will seek to hold her liable if the funds are determined to be Anchor's collateral to be spent, and the Estate is at risk of irreparable harm through the accrual of unpaid property taxes and HOA fees, which are actively diminishing the value of the Eton Court Properties.

**I. The Debtor's Membership Interests in His Solely Owned LLCs are Property Rights the Trustee is Entitled to Administer and are Likely to Have Value Above the Amount of the Debtor's Claim of Exemption.**

Trustee's Right to Administer LLCs. The membership interests in each LLC became property of the Debtor's bankruptcy estate when he choose to voluntarily file a chapter 7 bankruptcy petition.11 U.S.C. § 541(a). Because he was the sole member of each LLC, the estate received the entire membership interest, both the economic rights and the governance rights. *In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003). In *Albright*, the court held that where "there are no other members in the LLC, the entire membership interest passed to the bankruptcy estate." *Id.* at 540. The trustee there "obtained all [the debtor's] rights, including the right to control the management of the LLC." *Id.* The Bankruptcy Appellate Panel for the Ninth Circuit agreed in a similar context. *Fursman v. Ulrich (In re First Prot., Inc.)*, 440 B.R. 821, 830 (B.A.P. 9th Cir. 2010). The appellate panel rejected the debtors' argument that only their economic rights entered the estate and held that the trustee stepped into the debtors' shoes and took all of their rights in the LLC, including the right to control it. *Id.* at 830.

The Trustee therefore holds the same membership rights in these LLCs that the Debtor held before the petition date,[2] and the Debtor no longer holds them. *Id.* ("We conclude that all of Debtors' contractual rights and interest in [their solely owned LLC] became property of their estate under § 541(a)(1) by operation of law when they filed their petition."); *Schwartzer*, 519 B.R. at 306 ("Numerous bankruptcy courts have held, and the Court agrees, that where a debtor has a membership interest in a single-member LLC and files a petition for bankruptcy under

[2] With multimember LLCs, some courts have required trustees to obtain charging orders or otherwise enforced restrictions on assignment of membership rights. These issues do not arise here because the Debtor is the 100% owner. As *Albright* explained, "[i]n a single-member entity, there are no non-debtor members to protect," and so "[t]he charging order limitation serves no purpose in a single member limited liability company." 291 B.R. at 540.

Chapter 7, the Chapter 7 trustee succeeds to all of the debtor’s rights, including the right to control that entity, and a trustee need not take any further action to comply with state law before exercising such control.”) (collecting cases).

Because the Trustee holds all of the membership and governance rights, she controls each LLC's decisions about how its income is handled and where it is paid. A trustee who succeeds to a debtor’s wholly owned LLC interests may “sell or otherwise take ownership of any assets” of those LLCs. *Cleveland*, 519 B.R. at 307. Upon the filing, the trustee “controls, directly or indirectly, all governance of that entity, including decisions regarding liquidation of the entity’s assets.” *In re Modanlo*, 412 B.R. 715, 728 (Bankr. D. Md. 2006) (citing *Albright*, 291 B.R. at 541).

This Court has handled the issue of LLC interests the same way in a prior case. In *In re Peter Stuart*, Case No. 26-00113-ELG (Bankr. D.D.C.), this Court authorized the bankruptcy trustee to sell the real and personal property owned by Michigan Liquors LLC and 1240 Mount Olivet Road LLC, which were LLCs that were owned or managed by the chapter 7 debtor at the time of his bankruptcy case. [Case No. 26-00113, Dkt. Nos. 69, 79, 113, 119, 183, 184] The Court then approved the distribution of the proceeds to the chapter 7 estate after ensuring that creditors of those LLCs were accounted for. [Case No. 26-00113, Dkt. Nos. 207, 208, 247, 249].

The Trustee’s actions are consistent with this authority. Here, Sojourn acts as the management company and agent for the LLCs. Directing it to stop paying distributions to the Debtor and to pay them to the estate is simply an exercise of the control the Trustee now holds over the Debtor’s property interests and the proceeds of those interests. *See* 11 U.S.C. § 541(a)(1), (a)(6). Distributions on the membership interests are estate property. The Code requires that any matured or payable debt that is estate property be paid "to, or on the order of,

the trustee." 11 U.S.C. § 542(b). Any distribution paid to the Debtor after the Petition Date diverts estate property that can be used to make payments to creditors. The Trustee's instructions to Sojourn are, thus, a proper and necessary step in administering the estate. *See* 11 U.S.C. §§ 541(a), 542(b).

The Exemption Issue. Once a chapter 7 bankruptcy case is filed, a debtor has no authorization to withdraw rents as personal compensation and must turn those funds over to the Trustee—regardless of whether the properties at issue have no equity. *In re Douglas*, 497 B.R. 168, 169–70 (Bankr. D.D.C. 2013). The Debtor's act of claiming a $1.00 exemption in his LLC interests does not alter this result. *Cicala*, 142 B.R. at 570 (rejecting argument that a $1.00 exemption under Section 522(d)(5) prevented administration by a trustee where the debtors had collected a total of over $14,000 in rents).

"[C]laiming an exemption in an asset does not necessarily preclude administration of that asset by the trustee in bankruptcy." *Soost*, 262 B.R. at 72. When a Debtor exempts a $1.00 interest in real estate, or another asset, "the 'property claimed as exempt' within the meaning of section 522(l) is merely an interest in property not to exceed a specified value." *Id.* (citing 11 U.S.C. § 522(d)(5); *Owen v. Owen*, 500 U.S. 305, 310, (1991)) (quotation omitted). As a result, "where the value of an asset exceeds the amount of the claimed exemption, the asset as a whole does not become exempt. Instead, only a partial interest representing a certain amount of the asset's value is exempted." *Soost*, 262 B.R. at 72.

Where the debtor unambiguously made his or her intention clear that the debtor was claiming the full amount of the asset as exempt and no objections were made to the claim of exemption, some cases that have held that a $1.00 exemption may prevent administration by a trustee. *See Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992); *Allen v. Green (In re Green)*, 31

F.3d 1098 (11th Cir. 1994). But that's not the case here, for two reasons: (1) with respect to the LLC assets, the Debtor did not originally[3] check the box to indicate he intended to exempt the full fair market value of the asset with respect to the LLC interests, [Dkt. No. 1, p. 17–18]; and (2) the Trustee's time to object to the claim of exemptions has not expired, and the Trustee intends to pursue an objection.

As a result, in these circumstances, the Debtor's $1.00 exemption does not prevent the Trustee from administering the asset. *Soost*, 262 B.R. at 72 ("[T]he debtor's act of claiming a $1.00 exemption in the subject parcel of nonresidential real estate does not automatically render the parcel completely exempt and immune from sale."); *Cicala*, 142 B.R. at 571 ("[T]he statute guarantees to [the debtors] the value of their interest—up to a set dollar limit—once they invoke their exemption. Thus, they cannot claim entitlement to the rents on the theory that their exemptions reach the entire property.").

## II. The Request for a Temporary Restraining Order Should Be Denied.

The Debtor's request for a temporary restraining order and/or a preliminary injunction should be denied. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In seeking injunctive relief, the movant is required to establish (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Id.* at 20; *see also In re MP PPH LLC*, 660 B.R. 410, 428–31 (Bankr. D.D.C. 2024) (considering these factors). All four factors, taken together must weigh in favor of the injunction. *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). Here, the factors weigh in favor of denying relief.

[3] The Debtor subsequently amended his exemptions. [Dkt. No. 17, p.5–6].

Likelihood of Success on the Merits. For the reasons stated in Section I, above, the Debtor cannot establish a likelihood of success on the merits. When a bankruptcy case is filed, a debtor's membership interests become property of the bankruptcy estate and the trustee is entitled to receive the debtor's economic rights as well as the debtor's non-economic management rights. *Albright*, 291 B.R. at 540. The Trustee does not have to take the Debtor's claim of the value of those interests at face value and a Debtor claiming a $1.00 wildcard exemption does not prevent the Trustee from investigating or administering this asset. *Soost*, 262 B.R. at 72.

In these circumstances, where the Debtor testified he is receiving $13,800.00 of proceeds each month on account of the interests, the Trustee appropriately exercised her business judgment in concluding the LLC interests were likely able to be administered and instructing Sojourn to deposit those funds in a fiduciary account. This enables the Trustee to investigate the potential asset and ensures the funds are safeguarded while the Debtor and Trustee seek review of their respective interests before this Court. The Debtor is unlikely to succeed on his claim that the Trustee is somehow "expropriating" these assets or engaged in any wrongdoing.

Likelihood of success favors the Trustee.

Likelihood of irreparable harm. The Debtor is also not likely to be irreparably harmed in the absence of an injunction. The Trustee is expeditiously administering the Estate and will be filing an objection to the Debtor's claim of exemptions very shortly. Moreover, the Trustee intends to place the rent proceeds she receives in her fiduciary account for this case, pending further Court order. As a result, the issues will likely be decided on the merits very shortly into this bankruptcy case and the funds at issue are not at a risk of loss.

In these circumstances, the Debtor does not face a risk of irreparable harm that injunctive

relief is designed to address. It is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Id.*

The Debtor's lack of irreparable harm favors the Trustee.

<u>Balance of equities</u>. The balance of the equities favors the Trustee. The Trustee has a statutory duty to collect monies that are property of the estate and to investigate the financial affairs of the Debtor. 11 U.S.C. §§ 704(a)(1), (a)(4). The Trustee would thus be harmed by the issuance of a federal court injunction that prevents her from carrying out these duties.

The Trustee also faces risk. The Ninth Circuit recently allowed a secured creditor to pursue a negligent breach of fiduciary duty claim against a trustee where a secured creditor alleged that the trustee failed to seek turnover of the rent proceeds related to real properties or pay the secured creditor's claims. *Phillips v. Goldman (In re Gilman)*, 176 F.4th 1152, 1167–69 (9th Cir. 2026) (petition for certiorari pending); *see also In re Morsey Constructors, LLC*, No. 24-50079, 2025 WL 2881569, at *4 (Bankr. W.D. Ky. Oct. 9, 2025) (finding in the context of a breach of fiduciary duty claim asserted by a secured creditor that a chapter 7 trustee owes an obligation to preserve the assets on which the creditors have a lien while dismissing on other grounds).

Here, the money from the rents is actively being spent by the Debtor, making it difficult if not impossible for the Trustee to recover these funds. [Ex. B, p. 25, ln. 8–12] (testifying that "there's not really anything left" because expenses are paid "and then I take the rest"). Moreover, the Trustee is concerned that the rent proceeds being paid to the Debtor may be the cash collateral of Anchor. The Debtor did not satisfactorily assuage this concern when asked directly

about this issue at his Section 341(a) meeting. *See* [Ex. B, p. 20 ln. 13–p. 22, ln. 1]. The Debtor has not yet provided the Trustee with the loan documents that would allow the Trustee to determine if Anchor's security interest may attach to these proceeds—though the Trustee requested this information. *See* [Ex. C]. The Eton Court Properties are being harmed by the loss of the rent proceeds, particularly as the property taxes and condo/HOA obligations remain unpaid. [Ex. B., pp. 24–25]. These obligations will likely result in liens that will be ahead of Anchor's secured debt, further eroding any equity in the properties or value that may be returned to the secured creditor.

The equities favor the Trustee.

Public Interest. A trustee's collection of rents serves the public interest. The rents provide a source of funds for the payment of claims and allowing the trustee to maximize the estate for the creditors' benefit. *Douglas*, 497 B.R. at 169–70. The public interest is benefited by the orderly administration of the case, the payment of claims in accordance with the Bankruptcy Code, and maximizing returns for creditors. All of these interests are promoted by denying the requested injunction.

Here, the Trustee's administration of the estate and investigation of the assets would be materially disrupted by the issuance of an injunction. In the Bankruptcy Code, Congress required trustees to investigate the affairs of the Debtor and collect and reduce to money the property of the Estate. 11 U.S.C. §§ 704(a)(1), (a)(4). An injunction that prevents the Trustee from determining whether there is equity in the properties that could be sold or determining if the rents are the collateral of the secured creditor would prevent the Bankruptcy Code from working as it should.

The Bankruptcy Code requires creditors to be paid in accordance with the priority

scheme. 11 U.S.C. § 507. The Code also requires a bankruptcy trustee to protect a lender's cash collateral. 11 U.S.C. § 363(c)(4) ("Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control."). In this case, the Debtor is receiving and spending rent proceeds without knowing whether the monies at issue are the cash collateral of the secured lender. [Ex. B, p. 20, ln. 18–21]. This places at risk the Trustee and the rights of third-party creditors who are affected by the Debtor's decisions. This is also true of the condo/HOA association and the taxing authorities of the District of Columbia, who have a right to have their statutorily due fees and taxes paid. Ensuring the legal rights of these third parties are protected in bankruptcy and that the value of the real property is preserved serves the public interest.

The public interest factor favors the Trustee.

## Conclusion

WHEREFORE the Trustee respectfully requests that this Court enter an order denying the Debtor/Plaintiff's Motion and granting such other and further relief as is just and proper.

Dated: November 18, 2026

Respectfully submitted,

*/s/ Bradley D. Jones*
Bradley D. Jones, No. VA68
Joshua W. Cox, No. 1033283
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 785-9100
Fax (202) 572-9943
brad.jones@stinson.com
joshua.cox@stinson.com
*Attorneys for*
*Andrea Campbell Davison, Trustee*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2026, I served a copy of the foregoing via CM/ECF upon all parties receiving notice thereby. A copy was also sent on November 18, 2026 by first class mail to:

Maurice B. VerStandig, Esq.
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Debtor*

/s/ *Bradley D. Jones*
Bradley D. Jones